IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| TED JASON WARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:10cv745-WHA-SRW |
| | ) | (WO) |
| ALABAMA DEPARTMENT OF | ) | |
| CONSERVATION AND NATURAL | ) | |
| RESOURCES and M. BARNETT | ) | |
| LAWLEY, individually and in his | ) | |
| official capacity as Commissioner for the | ) | |
| Alabama Department of Conservation and | ) | |
| Natural Resources, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

This case is before the court on a Motion to Dismiss (Doc. #6) and a Motion to Stay Proceedings (Doc. #8) filed by Defendant M. Barnett Lawley ("Lawley").

The Plaintiff, Ted Jason Ward ("Ward"), filed a Complaint in this court on September 3, 2010, against Defendants Alabama Department of Conservation and Natural Resources ("DCNR") and Lawley (collectively, "Defendants"), based on Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981, and the Fourteenth Amendment.[1] In the Complaint, Ward brings claims of (1) Title VII Racial Discrimination against DCNR (Count I); (2) Title VII Retaliation against DCNR (Count II); (3) Section 1981 Racial Discrimination Against Lawley (Count III); (4) Section 1981 Retaliation Against Lawley (Count IV); and (5) 14th Amendment

---

[1] Ward brings his Section 1981 and 14th Amendment claims through 42 U.S.C. § 1983.

Racial Discrimination Against Lawley (Count V).  Lawley has moved to dismiss Counts III through V.

The court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question).

For reasons to be discussed, the Motion to Dismiss is due to be GRANTED, and the Motion to Stay Proceedings is due to be DENIED AS MOOT.

## II.  MOTION TO DISMISS STANDARD

The court accepts the plaintiff's factual allegations as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), and construes the complaint in the plaintiff's favor, *Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993).  In analyzing the sufficiency of pleading, the court is guided by a two-prong approach: one, the court is not bound to accept conclusory statements of the elements of a cause of action and, two, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to entitlement to relief.  *See Ashcroft v. Iqbal,* _ U.S. _,  129 S. Ct. 1937, 1949-50 (2009).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).  To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but instead the complaint must contain "only enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.  The factual allegations "must be enough to raise a right to relief above the speculative level." *Id*. at 555.

## III.  FACTS

The allegations of the Plaintiff's Complaint are as follows:

Ward is a white male.  On October 7, 2007, Ward applied for the position of "Conservation Enforcement Officer" with the DCNR.  Accordingly, the Alabama State Personnel Board placed Ward on the register of eligible candidates for the position.

Ward's credentials were favorable: (1) Ward's score on the qualifying examination "indicated that at one time he was ranked Number 1 in the State for [sic] Conservation Enforcement Officer's position" (Compl. ¶ 9); (2) prior to applying for the position, Ward had already passed "Peace Officer Standards Training" (Compl. ¶ 10); (3) Ward had several years of law enforcement experience, fourteen years of military experience, and "significant college credit" (Compl. ¶¶ 10-11).  Additionally, an interviewer informed Ward that, because of his prior law enforcement and outdoors experience, Ward was "the type of person that [DCNR] was looking for."  (Compl. ¶ 12.)

In August 2008, DCNR hired an African American male instead of Ward for the Conservation Enforcement Officer Position.  Pursuant to DCNR policy, Ward's application would be considered for future vacancies.  However, in August 2009, Ward's application was once again passed over in favor of an African American male.  Ward alleges that these African American Males were "less qualified" than he, and thus, by hiring them, Defendants "discriminated against Plaintiff on the basis of his race."  (Compl. ¶ 14.)

On August 17, 2009, Ward filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").  Ward alleges that "[t]hereafter, the Defendants continued with their discriminatory practices and retaliated against the Plaintiff for filing the EEOC charge

3

and refused to hire Plaintiff for the position.  Plaintiff has been denied employment in this position on a continuing basis since that time."  (Compl. ¶ 18.)

Ward alleges that Lawley's role in this alleged discrimination and retaliation was that Lawley, as the Commissioner of DCNR, "gave final approval on . . . offers of employment issued by the DCNR."  (Compl. ¶ 15.)

## IV.  DISCUSSION

Lawley seeks to dismiss all of the claims against him: Counts III, IV, and V.

### A.  Dismissal of Official Capacity Claims

As a preliminary matter, the court notes that Ward has brought Counts III through V against Lawley in Lawley's individual capacity and official capacity.  Each of these Counts seek money damages as well as prospective injunctive relief against Lawley.  To the extent that Ward seeks money damages against Lawley, "the Eleventh Amendment prohibits § 1983 claims . . . for money damages against individual defendants in their official capacities." *Owens v. Ala. Dep't of Mental Health & Mental Retardation*, No. 2:07cv650-WHA, 2008 WL 4079975, at *3 (M.D. Ala. Aug. 29, 2008) (Albritton, J.) (citing *Cross v. Alabama Dep't of Mental Health & Mental Retardation*, 49 F.3d 1490, 1503 (11th Cir.1995)).  Therefore, these claims are due to be dismissed with prejudice.   However, an official-capacity "section 1983 lawsuit seeking prospective injunctive relief against [an officer] in [his] official capacit[y] is not treated as an action against the state," *Cross*, 49 F.3d at 1503.

Thus, the claims not due to be dismissed by the above threshold analysis are claims against Lawley in Lawley's individual capacity, and claims against Lawley in Lawley's official capacity seeking prospective injunctive relief. However, as the court will discuss, these claims are also due to be dismissed.[2]

### B.     Failure to Hire Claim

Ward claims that he was discriminated against on the basis of race when Defendants hired African American job candidates instead of Ward in August 2008 and August 2009. In Count III, Ward brings his failure to hire claim against Lawley under 42 U.S.C. § 1983, based on the substantive rights established by 42 U.S.C. § 1981. This claim is due to be dismissed, because Ward has failed to state a § 1983 claim against Lawley.

To bring a § 1983 claim, Ward must show that (1) Lawley acted "under color of state law;" and (2) the conduct deprived Ward "of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Beaulieu v. City of Alabaster*, 454 F.3d 1219, 1225 (11th Cir. 2006) (quoting *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)) (internal punctuation and citations omitted). A defendant acts under color of state law when he or she "acts with authority possessed by virtue of his employment with the state." *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001).

---

[2]Lawley's Motion to Dismiss contains an argument that Lawley is entitled to qualified immunity. The court need not reach the qualified immunity argument, because it finds that Ward fails to state a claim against Lawley. If Ward chooses to file an Amended Complaint against Lawley in this case, the court notes that Lawley can still raise the defense of qualified immunity in a motion to dismiss Ward's Amended Complaint.

In their Motions, neither party disputes that Lawley acted under color of state law. Therefore, the court will consider whether Ward's Complaint states a claim that Lawley's alleged conduct deprived Ward "of rights, privileges, or immunities secured by the Constitution or laws of the United States."

Section 1981 entitles all persons in the United States to have the "same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens."[3] Discrimination claims based on rights established under § 1981 are analyzed under the same standards of proof and employ the same analytical framework as claims based on the Equal Protection Clause or Title VII. *See Bryant v. Jones*, 575 F.3d 1281, 1296 n.20 (11th Cir. 2009). Additionally, claims against state actors based on the substantive rights established by § 1981 must be brought under § 1983. *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989)).

The Supreme Court has instructed district courts on how to analyze the allegations of a complaint. The Supreme Court has stated that a district court is *not bound* to accept conclusory statements of the elements of a cause of action. *See Iqbal,* 129 S. Ct. at 1949-50. However, where there are well-pleaded *factual* allegations, a court should assume their veracity and then determine whether they *plausibly* give rise to entitlement to relief. *See id.* at 1949-50.

"Although a . . . complaint [alleging disparate treatment] need not allege facts sufficient to make out a classic *McDonnell Douglas* prima facie case, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002), it must provide 'enough factual matter (taken as true) to suggest'

---

[3]The Supreme Court has held that § 1981 "is applicable to racial discrimination in private employment against white persons." *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 286-87 (1976). Thus, Ward's claims based on § 1981 are not barred because he is white.

intentional race discrimination." *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008) (citing *Twombly*, 127 S.Ct. at 1965). Ward argues, in his Response to Lawley's Motion to Dismiss, that a number of allegations in the Complaint satisfy the pleading standard for the failure to hire claim. The pertinent allegations are:

> 1. "Defendants discriminated against the Plaintiff on the basis of his race . . . ." (Compl. ¶ 14.)
>
> 2. "At all relevant times herein, Defendant Lawley, individually and in his official capacity as Commissioner of the DCNR, gave final approval on these and all other offers of employment issued to job applicants by the DCNR." (Compl. ¶ 15.)
>
> 3. "Defendant Lawley, individually and in his official capacity as Commissioner unlawfully discriminated against the Plaintiff because of his race, thereby violating Section 1981." (Compl. ¶ 34.)
>
> 4. "As a proximate result of Lawley's foregoing acts and omissions, the plaintiff has been caused to suffer damages . . . ." (Compl. ¶ 35.)
>
> 5. "Defendant Lawley's conduct was willful, malicious, intentional and in conscious disregard of plaintiff's rights and the law . . . ." (Compl. ¶ 36.)

Ward has failed to allege any facts beyond "the speculative level," *Twombly*, 127 S.Ct. at 1965. The only *factual* allegation above that Ward makes about Lawley is that Lawley "gave final approval" on job offers, including the two offers made to African Americans whom Ward contends were hired instead of Ward. (Compl. ¶ 14.) Ward makes no allegation that Lawley rejected or approved the rejection of Ward's application, or even knew that Ward's application existed. In fact, Ward makes no allegation, nor can this court infer from any of Lawley's factual allegations, that Lawley even knew who Ward was. All of the other above allegations are simply recitations of the elements of a § 1983 cause of action based on a violation of § 1981. Because there are no factual allegations that Lawley personally took any action with respect to Ward,

much less took discriminatory action, Ward fails to state a claim. *See Edwards v. Prime, Inc.*, 602 F.3d 1276, 1300-01 (11th Cir. 2010) ("Edwards argues that the court should have given more weight to the opening sentence of Count 12, which asserts that . . . 'Edwards was subjected to a hostile discriminatory environment on the basis of race, in violation of 42 U.S.C. § 1981.' That broad statement, however, *is merely a 'formulaic recitation of the elements'* of a § 1981 claim and, standing alone, does not satisfy the pleading standard of Federal Rule of Civil Procedure Rule 8.") (emphasis added) (citations omitted).

Moreover, to the extent that Ward contends that Lawley should be liable for failing to hire Ward because another person within DCNR committed discriminatory activity, that argument also fails because there is no vicarious liability under § 1983. *See, e.g.*, *Iqbal*, 129 S. Ct. at 1948-49 ("[A] plaintiff must plead that each Government-official defendant, through the official's own *individual* actions, has violated the Constitution [or a federal statute].") (emphasis added); *see also Tindal v. Montgomery Cnty. Comm'n*, 32 F.3d 1535, 1541 (11th Cir. 1994) (current sheriff not liable under § 1983 for the firing of his subordinate by the former sheriff, because "there is no evidence that [the current sheriff] violated [the subordinate's] rights").

Additionally, to the extent that Ward contends Lawley should be liable under a "cat's paw" theory, this argument fails. Under a cat's paw theory of liability, "causation may be established if the plaintiff shows that the decisionmaker followed the biased recommendation without independently investigating the complaint against the employee. In such a case, the recommender is using the decisionmaker as a mere conduit, or 'cat's paw' to give effect to the recommender's discriminatory animus." *Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1332 (11th Cir. 1999). However, in this case, Ward has failed to allege any facts that suggest

8

Lawley's subordinates discriminated against Ward or were biased toward Ward, or that Ward "rubber stamped" a biased recommendation without any investigation.

In short, Ward fails state a claim against Lawley, and accordingly, Count III is due to be dismissed.

**C.    Retaliation Claim**

Ward also brings a retaliation claim against Lawley under § 1983, based on the substantive rights established by § 1981. This claim is due to be dismissed.

To state a prima facie case of retaliation, a plaintiff must show that: (1) he engaged in an activity protected under Title VII; (2) he suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action. *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001).

In this case, Ward alleges that Lawley is liable for retaliation because, after Ward filed a charge of discrimination with the EEOC for not being hired by DCNR, "the Defendants continued with their discriminatory practices and retaliated against the Plaintiff for filing the EEOC charge and refused to hire Plaintiff for the position." (Compl. ¶ 18.) In other words, Ward contends that Lawley retaliated against Ward by *doing nothing*. Ward effectively asks this court to find retaliation because DCNR did not immediately hire Ward once Ward filed an EEOC Complaint. Such a result would mean that all employers, or at least those, such as DCNR, who keep job applicants' applications on file for future review, would have to hire any job applicant who filed an EEOC Complaint to avoid being held liable for retaliation. Ward cites no case law supporting this proposition.

9

Moreover, Ward once again makes no *factual* allegations with respect to Lawley that show a causal connection between the protected activity of filing the EEOC complaint, and the adverse employment action of not being hired.  Ward's only factual allegation about Lawley's role in Ward not being hired is that Lawley gave final approval for offers of employment.  There are no factual allegations that Lawley knew anything about Ward's application at all.  Moreover, for the same reasons that Ward does not state a claim against Lawley under vicarious liability or the "cat's paw" theory of liability for failure to hire, *supra*, Ward does not state a claim for retaliation using those theories.

In short, Ward fails to state a claim against Lawley, and accordingly, Count IV is due to be dismissed.

**D.     Pattern or Practice Claim**

Ward also brings a claim under § 1983, based on substantive rights established by the Fourteenth Amendment.  Ward alleges that Lawley maintained a "custom, policy, or practice of discrimination and retaliation" at DCNR that led to DCNR's alleged discriminatory failure to hire Ward.  (Compl. ¶ 47.)  This claim is due to be dismissed.

While § 1983 claims "may not be brought against supervisory officials on the basis of vicarious liability or respondeat superior . . ., supervisors are liable under § 1983 . . . 'when there is a causal connection between actions of the supervising official and the alleged constitutional violation.'" *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010) (citations omitted).  To establish a causal connection, a plaintiff must allege "'facts which support an inference that the supervisor directed the subordinates to act unlawfully or knew that

the subordinates would act unlawfully and failed to stop them from doing so.'" *Id.* (citing *Gonzalez v. Reno*, 325 F.3d 1228, 1235 (11th Cir. 2003)).

In this case, Ward has alleged no facts that suggest Lawley had anything to do with the hiring process besides approving final offers of employment. Ward has not alleged any facts suggesting that Lawley directed subordinates to hire in a discriminatory manner, nor has Ward alleged that Lawley knew that subordinates were hiring in a discriminatory manner.

In short, Ward fails to state a claim against Lawley, and accordingly, Count V is due to be dismissed.

**E.     Motion to Stay Proceedings**

Lawley's Motion to Stay Proceedings requests that this court stay any discovery prior to resolving the Motion to Dismiss. However, because all of Ward's claims as to Lawley are due to be dismissed, Ward cannot conduct discovery against Lawley at this time. The court notes that if Ward files an Amended Complaint that states a claim against Lawley, Lawley can move to stay the case on qualified immunity grounds at that time. The court further notes that to the extent Lawley seeks to stay proceedings as to DCNR, Lawley lacks standing to do so. In short, the Motion to Stay Proceedings is due to be denied as moot.

## V.  CONCLUSION

For the foregoing reasons, it is hereby ORDERED as follows:

1. Lawley's Motion to Dismiss (Doc. #6) is GRANTED, and Counts III, IV, and V are DISMISSED. To the extent these claims are against Lawley in Lawley's individual capacity or

in Lawley's official capacity seeking prospective injunctive relief, these claims are DISMISSED without prejudice, and with leave to replead, if appropriate.  To the extent these claims are against Lawley in Lawley's official capacity and do not seek prospective injunctive relief, these claims are DISMISSED with prejudice.

      2. Lawley's Motion to Stay Proceedings (Doc. #8) is DENIED AS MOOT.

Any repleading as to these claims must be by the filing of an Amended Complaint and must be filed no later than **December 17, 2010**.  Any Amended Complaint must be complete in itself, and may not incorporate by reference any allegations of the original Complaint, in accordance with Local Rule 15.1.

The court is not suggesting that the Plaintiff should file an Amended Complaint, or that, if he does, an Amended Complaint will withstand a new Motion to Dismiss. The Plaintiff is merely being given an opportunity to do so, if he so chooses, and if he can do so considering Rule 11, *Fed.R.Civ.P.*

In the event the Plaintiff elects not to file an Amended Complaint to include claims against Defendant Lawley in his individual capacity, and in his official capacity for prospective injunctive relief, the case will proceed on the Title VII claims against DCNR, the court will enter an order calling for the filing of a Report of Parties Planning Meeting, and discovery may begin.

      Done this 3rd day of December, 2010.

                                        /s/ W. Harold Albritton
                                        W. HAROLD ALBRITTON
                                        SENIOR UNITED STATES DISTRICT JUDGE